QUESTION:
Must a nonprofit corporation selling tickets to a fundraising event and inadvertently collecting admissions tax from the buyers of the tickets remit the taxes collected to the state?
SUMMARY:
Transactions in which a tax-exempt nonprofit corporation charges admission to a fundraising event held in a municipal auditorium are taxable under the Florida admissions tax law, s. 212.04, F. S., and are not tax exempt by virtue of the nonprofit corporation's holding a sales and use tax exemption granted under s. 212.08(7)(a), F. S., with respect to the purchase or lease of articles of tangible personal property by religious, charitable, and educational institutions and used in carrying on the customary activities of such institutions.
Your question is answered in the affirmative.
Your letter states that the Mid County Medical Center (hereinafter called `the center') is a Florida nonprofit corporation and holder of a Florida sales tax exemption number. The center held a fundraising event in West Palm Beach Auditorium. The auditorium's public relations firm had tickets printed for the event which reflected the admissions price plus a 4 percent admissions tax. While the center did not request that this tax be collected, it was nevertheless collected from ticket buyers and deposited in the center's bank account. Your question, simply stated, is whether the center may keep these funds or must pay them to the state.
A nonprofit corporation does not become exempt from the admissions tax by virtue of holding a sales tax exemption number. The admissions tax is separate and distinct from the sales tax in this respect. Section 212.04, F. S., which imposes the admissions tax, is broadly worded:
 Admissions tax; rate, procedure, enforcement, etc. — It is hereby declared to be the legislative intent that every person is exercising a taxable privilege who sells or receives anything of value, by way of admissions. For the exercise of said privilege a tax is levied as follows . . . .
Likewise, the term `admissions' is broadly defined in s.212.02(16), F. S.:
 The term `admissions' means and includes the net sum of money after deduction of any federal taxes for admitting a person or vehicle or persons to any place of amusement, sport, or recreation, or for the privilege of entering or staying in any place of amusement, sport or recreation, including but not limited to theaters, shows, exhibitions, games, races or any place where charge is made by way of sale of tickets, gate charges, seat charges, box charges, season pass charges, cover charges, greens fees, participation fees, entrance fees or other fees or receipts of anything of value measured on an admission or entrance or length of stay or seat box accommodations in any place where there is any exhibition, entertainment, including admissions to performances of philharmonic associations, opera guilds, little theaters, and similar organizations, amusement, sport or recreation, and all dues paid to private clubs providing recreational facilities, including but not limited to golf, tennis, swimming, yachting, and boating facilities.
Other provisions in Ch. 212, F. S., which express the intent of the Legislature are also broadly worded. See, e.g., s. 212.21(2), which reads in part:
 It is hereby declared to be the specific legislative intent to tax each and every sale, admission, use, storage, consumption or rental levied and set forth in this chapter, except as to such sale, admission, use, storage, consumption, or rental, as shall be specifically exempted therefrom by this chapter, subject to the conditions appertaining to such exemption. . . .
Certain exemptions to the tax on admissions are set forth in s.212.04(2)(b), F. S., which reads:
 No tax shall be levied on admissions to athletic or other events held by elementary schools, junior high schools, middle schools, high schools, community colleges, deaf and blind schools, facilities of the [youth services program of the Department of Health and Rehabilitative Services], and state correctional institutions when only student, faculty, or inmate talent is utilized.
This exemption provision must be strictly limited to the transactions described therein. See s. 212.21(3), F. S., which reads:
 It is further declared to be the specific legislative intent to exempt from the tax or taxes or from the operation or the imposition thereof only such sales, admissions, uses, storages, consumption or rentals in relation to or in respect of the things set forth by this chapter as exempted from the tax to the extent that such exemptions are in accordance with the provisions of the constitution of the state and of the United States. It is further declared to be the specific legislative intent to tax each and every taxable privilege made subject to the tax or taxes, except such sales, admissions, uses, storages, consumptions or rentals as are specifically exempted therefrom by this chapter to the extent that such exemptions are in accordance with the provisions of the constitution of the state and of the United States. (Emphasis supplied.)
See also Thayer v. State, 335 So.2d 815 (Fla. 1976); Interlachen Lake Estates, Inc. v. Snyder, 304 So.2d 433 (Fla. 1973); and Wanda Marine Corp. v. State Dept. of Revenue, 305 So.2d 65 (1 D.C.A. Fla., 1975), applying the principle expressio unius est exclusioalterius to limit statutory enumerations to the things mentioned therein. Furthermore, tax exemptions generally are strictly construed against the party claiming the exemption. See, e.g., State ex rel. Szabo Food Services v. Dickinson, 286 So.2d 592
(Fla. 1973).
Returning to the instant question, I conclude that s.212.04(2)(b), F. S., provides no exemption for nonprofit corporations. The Department of Revenue's rules likewise provide no exemption for these corporations. See Rule 12A-1.05(2) and (3), F.A.C. Nonprofit corporations are therefore subject to the general provisions in s. 212.04, F. S., imposing an admissions tax.
The only remaining issue is whether the center's tax exemption under s. 212.08(7)(a), F. S., may be construed to cover admissions transactions. That provision reads:
 Religious, charitable and educational. — There shall be exempt from the tax imposed by this chapter articles of tangible personal property sold or leased direct to or by churches or sold or leased to, nonprofit religious, nonprofit educational, or nonprofit charitable institutions and used by such institutions in carrying on their customary nonprofit religious, nonprofit educational, or nonprofit charitable activities, including church cemteries. (Emphasis supplied.)
Assuming that the center meets all the requirements for this exemption under s. 212.08(7)(c), F. S., this exemption appears to be limited by its own wording to transactions in which an exempt party buys or leases and uses tangible personal property in carrying on the customary nonprofit activities of the exempt institutions. Admissions transactions are therefore not within the scope of the exemption. See s. 212.21(2) and (3), F. S., quoted above.
Although no judicial authority exists which directly deals with this question, the case of Zero Food Storage v. Dept. of Revenue,330 So.2d 765 (1 D.C.A. Fla., 1976), appears to support the conclusion reached herein. In that case, Zero Food Storage, the lessee of a cold storage warehouse for food, sought to avoid payment of rental taxes under s. 212.031, F. S., under the exemption for grocery transactions in s. 212.08(1), F. S. The court rejected this contention, holding that the exemption relied on applied only to tangible personal property and not to the rental of real property. A similar process of reasoning would require limiting the exemption in s. 212.08(7), F. S., to tangible personal property transactions in which the property is both purchased and used by the exempt institution in carrying on its customary nonprofit religious, charitable, or educational activities and not applying it to admissions transactions.
Prepared by: Staff